UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TAMMIE WADE                                    CIVIL ACTION

VERSUS                                         NO. 13-5442

MEGAN J. BRENNAN, POSTMASTER                   MAGISTRATE JUDGE
GENERAL UNITED STATES                          JOSEPH C. WILKINSON, JR.
POSTAL SERVICE

## ORDER AND REASONS ON MOTIONS

Plaintiff, Tammie Wade, alleges that her former employer, Megan J. Brennan,

Postmaster General of the United States, failed to accommodate her disability when

requested and retaliated against her by terminating her employment, all in violation of

the Rehabilitation Act, 29 U.S.C. § 791 et seq.  Complaint, Record Doc. No. 1.  This

matter was referred to a United States Magistrate Judge for all proceedings and entry of

judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.

Record Doc. No. 17.

The Postmaster filed two motions for partial summary judgment in December

2014, one addressing plaintiff's retaliation claim and one addressing her failure to

accommodate claim.  Record Doc. Nos. 32, 33.  The court granted Wade's motion to

continue the submission date of these motions and to continue the trial date and

discovery deadline.  In the same order, the court dismissed defendant's two motions for

partial summary judgment and ordered that she may refile a single motion for summary

judgment, containing all of her arguments and grounds in a single submission. Record Doc. No. 42.

Following a status conference with counsel for the parties, the court entered a new scheduling order and ordered the Postmaster to file a single motion for summary judgment no later than May 19, 2015. Record Doc. No. 44. The court further ordered that "[c]ounsel will discuss the possibility of an earlier filing and submission of any motion for summary judgment that can be addressed principally as a matter of law on a clear set of undisputed facts, without the need for further discovery. Defense counsel will submit his proposal concerning any such motion to plaintiff's counsel no later than January 23, 2015." Id. at pp. 1-2.

On April 1, 2015, during oral argument on plaintiff's motions to compel and to clarify the scheduling order, Record Doc. Nos. 46, 47, the parties entered into a written stipulation. Record Doc. No. 56. "The parties agree[d] that many of the unresolved discovery issues rely on a threshold determination of whether Plaintiff's request for light duty work under the [Collective Bargaining Agreement] also constituted a request for reasonable accommodation under the [Rehabilitation] Act. Therefore, the parties propose that Defendant file [a motion for summary judgment] on this issue . . . and allow the court to rule on the dispositive motion prior to ruling on any unresolved discovery issues." Id. at p. 1. "Defendant's [motion for summary judgment] will also address Plaintiff's retaliation claim." Id. at p. 2. The parties asked the court to continue

plaintiff's two pending motions until after ruling on defendant's soon-to-be-filed summary judgment motion.

In accordance with the stipulation, the court vacated its scheduling order, except to preserve the final pretrial conference and trial dates on its calendar, and ordered that "defendant must file its motion for summary judgment on the issues of (1) plaintiff's retaliation claim and (2) whether plaintiff's request for light duty under the collective bargaining agreement also constituted a request for reasonable accommodation under the Rehabilitation Act" by April 7, 2015.  Record Doc. No. 57.

The Postmaster filed a timely motion for summary judgment, supported by affidavits, verified documents and deposition excerpts.  Record Doc. No. 58.  The motion incorporates essentially all the arguments of defendant's two dismissed motions for partial summary judgment and seeks dismissal of all of plaintiff's claims on several grounds.

Wade filed a timely memorandum in opposition, Record Doc. No. 60, which was superseded by an amended opposition, Record Doc. Nos. 61, 62, 63, supported only by her own, one-sentence declaration under penalty of perjury.  Record Doc. No. 63-1. Plaintiff objects to the portion of defendant's summary judgment motion that seeks dismissal of her claim of failure to accommodate her disability on grounds other than that her request for light duty under the Collective Bargaining Agreement was not also a request for accommodation under the Rehabilitation Act.  Wade argues that the

stipulation of the parties on April 1, 2015, limited defendant's ability to move for summary judgment to that single issue. In addition, to the extent that Brennan's motion seeks dismissal of plaintiff's retaliation claim, Wade asks that it be continued until she can depose Pamela Shepherd, who was the Manager of Distribution Operations when Wade was fired and was one of two supervisors who signed the document that initiated the termination process. Defendant filed a timely reply memorandum, Record Doc. No. 64, and plaintiff was permitted to file a sur-reply. Record Doc. Nos. 67, 68, 69.

The court heard oral argument on defendant's motion for summary judgment on June 3, 2015. Plaintiff's counsel advised the court that he had recently propounded discovery requests to defendant, seeking production of e-mails to and from Shepherd concerning Wade. The court took the motion for summary judgment under submission. The court ordered plaintiff's counsel to submit his Fed. R. Civ. P. 56(d) declaration in support of his request to continue the summary judgment motion by June 9, 2015 and also ordered counsel to advise the court jointly in writing concerning the proposed additional discovery concerning Shepherd by the same date. Record Doc. No. 70.

The parties filed a timely Joint Memorandum Regarding Electronic Discovery, in which they agreed to limit the search parameters for plaintiff's recent request for production of documents to all emails containing the word "Wade" sent to or from Shepherd from 12/11/11 through 3/31/12. Defendant's counsel stated that the search had been run and that the results would be available within a few days. Record Doc. No. 71.

4

Wade filed a Rule 56(d)(2) Motion for Continuance of Partial MSJ with Declaration, formally seeking to continue defendant's summary judgment motion as to plaintiff's retaliation claim until after she can depose Shepherd.  Record Doc. No. 72. The Postmaster filed a memorandum in opposition.  Record Doc. No. 75.

Having considered the complaint, the record, the arguments of the parties and the applicable law, IT IS ORDERED that plaintiff's motion for continuance is DENIED and defendant's motion for summary judgment is GRANTED, for the following reasons.

## I.   THE UNDISPUTED FACTS

The following material facts are accepted as undisputed solely for purposes of the pending motion for summary judgment.  Plaintiff admitted virtually all of defendant's Statement of Uncontested Material Facts, Record Doc. No. 58-2, in her Statement of Countervailing Facts, Record Doc. No. 63-1.  Although she objected on relevance grounds to some facts regarding grievances that she had filed under the Collective Bargaining Agreement, Wade did not deny any of those facts.

Wade began work at the United States Postal Service ("USPS") on August 16, 1997, as a flat sorter clerk.  Her "bid job" during the time period relevant to the instant lawsuit was mail processing clerk, which was a change of title after 1997 without any change in duties from her original job.

As a result of physical limitations, Wade was unable to perform her bid job and was restricted to light duty work from 2000 to 2010.  Light duty work is for employees

who are unable to perform their regularly assigned duties because of a non-job-related injury or condition.   Plaintiff's light duty requests were made pursuant to labor agreements between the USPS and her union, the American Postal Workers Union, specifically, Article 13 of the Collective Bargaining Agreement, Defendant's Exh. 4, Record Doc. No. 58-9; Article 13 of the Local Memorandum of Understanding, Defendant's Exh. 5, Record Doc. No. 58-10; and Section 355 of the Employee and Labor Relations Manual, Defendant's Exh. 6, Record Doc. No. 58-11.   After beginning light duty in 2000, Wade never returned to the duties of her bid job.  She regularly re-applied for light duty, usually every 90 days and on occasion every six months.  She never requested permanent light duty reassignment.

The USPS did not always grant Wade's request for light duty.   Instead, it periodically denied her requests on the basis that such work was not available.  Plaintiff filed a grievance each time her request for light duty was denied.  With relevance to the instant lawsuit, the USPS denied Wade's request for light duty on February 8, 2007.  She was off work for approximately 90 days beginning February 8, 2007, and she returned to light duty on May 2, 2007.

Wade filed three claims based on the denial of her request for light duty on February 8, 2007:  (1) a grievance under the Collective Bargaining Agreement, (2) an Equal Employment Opportunity ("EEO") complaint and (3) a claim with the Department of Labor's Office of Workers Compensation Programs, in which she contended that she

had sustained a job-related injury as a result of the denial of her light duty request and being out of work.  Only the first two are relevant to the instant lawsuit.

Wade's EEO complaint was appealed to the Merit Systems Protection Board (the "Board").  An Administrative Judge found on March 26, 2008, that the USPS had made a good faith effort to accommodate Wade's light duty request and that she had failed to satisfy her burden to show that she was constructively suspended.

Despite having returned to work on May 2, 2007, Wade maintained her grievance under the Collective Bargaining Agreement, seeking to recover lost wages for the time that she was out of work after defendant's denial of her light duty request.  The final step of that grievance process was an arbitration hearing held on February 3, 2012.  On February 6, 2012, Wade received a favorable result from this grievance and was awarded lost wages and benefits for the time that she was out of work in 2007.

On June 20, 2010, Wade was involved in a non-work-related car accident and was absent from work for about six months.  On November 30, 2010, she sought to return to work by submitting a light duty request.  Consistent with her prior requests, this request asserted that plaintiff had the following restrictions:  lifting no more than 25 pounds, no standing for more than 15 minutes at a time, a day-time tour of duty and use of a high-backed chair.

On December 23, 2010, the USPS denied Wade's November 30th request for light duty on the stated basis that no work was available within her work restrictions.  She did

not work for the USPS at any time after that date.  She remained on Leave Without Pay status until her employment was terminated in March 2012.

On January 5, 2011, Wade filed a grievance pursuant to the Collective Bargaining Agreement regarding the December 23, 2010 denial of her light duty request.  She did not file an EEO complaint or appeal to the Board.  Her grievance over the December 23, 2010 denial of light duty was denied.

On December 30, 2011, the USPS scheduled an investigative interview to determine whether Wade could perform the duties of her employment.  The investigative interview was conducted on January 9, 2012 by her supervisor, Gwendolyn Williams.

As of January 17, 2012, Wade had been in leave without pay status for more than one year.  The USPS initiated Wade's potential removal from service on that date when Williams and Pamela Shepherd, the Manager of Distribution Operations, signed a Request for Appropriate Disciplinary Action.

On February 3, 2012, the USPS sent a Notice of Proposed Removal to plaintiff. The notice stated that the USPS had determined that (1) Wade was not able to perform the basic physical requirements of her position and (2) she had been on leave without pay for more than one year.  Plaintiff admits that these facts were true, but denies that they were the genuine reasons for her proposed or actual removal.

The same day that the Notice of Proposed Removal was issued, an arbitration hearing was held on Wade's grievance stemming from the February 2007 denial of her

light duty request.  On February 6, 2012, the arbitrator sustained Wade's grievance, held that the USPS had violated Article 13 of the Collective Bargaining Agreement when it denied Wade's request for light duty, and ordered that plaintiff be made whole as to any lost wages and benefits from the time in 2007 when she was off work.

On February 29, 2012, Wade and her union representative met with the deciding official, Gilbert Romero, Jr., the Senior Plant Manager, to discuss her proposed removal. Romero concluded that the evidence was sufficient to sustain the charge and that removal was a reasonable penalty.  Romero sent plaintiff a Letter of Decision dated March 19, 2012.  The effective date of her removal was March 24, 2012.

Wade challenged the removal by filing both a grievance and an EEO complaint. She contacted the EEO office of the USPS to begin the process of filing a claim on April 13, 2012.  Her formal EEO complaint alleging disability discrimination and retaliation with regard to her removal was filed on July 25, 2012.

On August 8, 2012, the USPS issued an Acceptance Letter which defined the issues raised by plaintiff's complaint as follows:

> You alleged discrimination based on Disability (Diabetes, High Cholesterol, Stress, Depression, High Blood Pressure and Extremities) and Retaliation (Unspecified) when:
> 1. On or about December 2010, you were denied accommodation within your medical restrictions; and
> 2. On March 19, 2012, you were issued a Letter of Decision removing you from the Postal Service effective March 24, 2012.

An independent investigator was assigned to plaintiff's EEO complaint. Statements were taken from Wade and a number of postal supervisors and managers, including Williams.[1]  The USPS issued a Final Agency Decision on Wade's EEO complaint on January 24, 2013, concluding that the evidence did not support a finding that she was subjected to discrimination as alleged.

Wade's Employee Medical File would contain documentation of any requests for light duty work under the Collective Bargaining Agreement or for reasonable accommodation under the Rehabilitation Act.  While Wade's Employee Medical File contains numerous documents requesting light duty work under the Collective Bargaining Agreement, it contains no documentation that she ever requested reasonable accommodation under the Rehabilitation Act.

Plaintiff's supervisor, Williams, stated in her declaration under penalty of perjury for the EEO investigation that she had no knowledge that Wade had requested reasonable accommodation or of any specific accommodation request.  Defendant's Exh. X to Defendant's Exh. 1 (declaration under penalty of perjury of Paul C. Wolf, attorney and custodian of plaintiff's records for the USPS), Record Doc. No. 58-6 at p. 20, responses to Question Nos. 11-14.[2]  Williams said that she began the process of removing plaintiff

---

[1]Williams retired from the USPS before this lawsuit was filed and is now deceased.  She was not deposed before her death.

[2]The questions are at pp. 25-30 of the same exhibit.

from service because Wade had been on leave without pay for more than a year. Williams stated that she issued the Notice of Proposed Removal because Wade had been on leave without pay for more than one year and was not able to perform her duties. Id. at pp. 20, 22, responses to Question Nos. 15, 18. Wade objects to Williams's declaration, arguing that it contains inadmissible hearsay.

The light duty work that plaintiff performed, known as manual casing, was not a vacant funded position. Rather, it was a collection of tasks assigned to provide her work in accordance with the Collective Bargaining Agreement. This was not a permanent position.

Michael Gardner was the Senior Manager of Distribution Operations during the relevant time. He testified that a request for light duty is distinct from a request for reasonable accommodation and that "Wade did not ask for accommodation. She only asked for light duty for six months." Defendant's Exh. 12, deposition of Michael Gardner, at pp. 40-41.

Anita Smith was an Operation Support Specialist during the relevant time. She testified in detail how requests for light duty and requests for reasonable accommodation are distinct requests that are handled differently. Defendant's Exh. 14, Deposition of Anita Smith, at pp. 9-12.

Wade did not mention the February 2012 arbitration hearing or her award to any of her supervisors or managers. None of her supervisors or managers said anything about

the arbitration hearing or award to plaintiff.  Other than the arbitration hearing being on the same day as her Notice of Proposed Removal, Wade has no reason to think that the USPS retaliated against her.  Defendant's Exh. 2, Wade deposition at p. 106.

II.    <u>ANALYSIS</u>

A.    <u>Standards of Review</u>

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
> (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is
competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in
the record that it believes demonstrate the absence of a genuinely disputed material fact,
but it is not required to negate elements of the nonmoving party's case.  Capitol Indem.
Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production
may rely on a showing that a party who does have the trial burden cannot produce
admissible evidence to carry its burden as to [a particular material] fact."  Advisory
Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome
of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248
(1986).  No genuine dispute of material fact exists if a rational trier of fact could not find
for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't
Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the
burden of proof at trial must cite to particular evidence in the record to support the
essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex
rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011).  "[A] complete

failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

B.      Plaintiff's Motion for Continuance

The court denies plaintiff's Rule 56(d)(2) Motion for Continuance of Partial MSJ with Declaration, Record Doc. No. 72, seeking to continue defendant's summary judgment motion as to plaintiff's retaliation claim until after Wade can depose Pamela Shepherd.  Contrary to Wade's argument, neither the stipulation of the parties nor the court's April 2, 2015 order limits the grounds upon which defendant could move for summary judgment.  The avowed purpose of the stipulation was for "the court to rule on the dispositive motion prior to ruling on any unresolved discovery issues" and to set an early deadline for the Postmaster to file such a motion that addressed, at a minimum, whether Wade's request for light duty work under the Collective Bargaining Agreement constituted a request for reasonable accommodation under the Rehabilitation Act.

A party may seek summary judgment at any time until 30 days after the close of discovery, unless the court orders otherwise.  Fed. R. Civ. P. 56(b).  Nothing in the parties' stipulation or the court's order limits the bases on which defendant could seek summary judgment.  The Postmaster had filed a motion for partial summary judgment six months earlier that made the same arguments, so plaintiff was well aware of the issues.  The court had twice ordered defendant to file a single motion for summary judgment.  Rule 56 does not require defendant to wait until Wade completes her discovery to file a summary judgment motion.  The parties' stipulation and the court's

April 1, 2015, order specifically noted that the Postmaster would move for summary judgment on plaintiff's retaliation claim.

The declaration of plaintiff's counsel submitted with her motion to continue fails to satisfy the requirement of Fed. R. Civ. P. 56(d) "that, for <u>specified reasons,</u> [the party opposing summary judgment] cannot present facts essential to justify its opposition," <u>id.</u> (emphasis added), so that the court should allow plaintiff additional time to depose Shepherd before ruling on defendant's summary judgment motion.

> The nonmovant . . . may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.  Rather, a request to stay summary judgment under [former] Rule 56(f) [now Rule 56(d)] must set forth a <u>plausible basis for believing that specified facts,</u> susceptible of collection within a reasonable time frame, <u>probably exist</u> and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.  If it appears that further discovery will <u>not</u> provide evidence creating a genuine issue of material fact, the district court may grant summary judgment.

<u>Raby v. Livingston</u>, 600 F.3d 552, 561 (5th Cir. 2010) (quotations and citations omitted) (emphasis added).

In this case, plaintiff seeks Shepherd's testimony regarding the causal connection necessary to establish Wade's retaliatory termination claim under Title VII.  Plaintiff's counsel speculates in his declaration that Shepherd <u>might</u> testify that the start-up of the arbitration process triggered Wade's removal.  However, Wade testified that she did not mention the arbitration hearing to any of her supervisors and that none of her supervisors said anything about the arbitration hearing to her.  Her counsel's mere speculation that

Shepherd might say something to establish a causal connection between the arbitration and plaintiff's removal fails to set forth a plausible basis for believing that specified facts probably exist that create a genuine issue of material fact for trial.

In addition, "[i]f the requesting party has not diligently pursued discovery, . . she is not entitled to relief under Rule 56(d)."  McKay v. Novartis Pharm. Corp., 751 F.3d 694, 700 (5th Cir. 2014) (quotation omitted).  Shepherd signed the Request for Appropriate Disciplinary Action that initiated plaintiff's termination in January 2012.  According to the Postmaster, Shepherd was identified as a person likely to have discoverable information in defendant's Rule 26(a)(1)(A) disclosures in January 2014.  Shepherd was listed on defendant's witness lists filed in July 2014.  Record Doc. Nos. 23, 27.  Yet Wade never listed Shepherd as a witness on her own witness lists filed in February, March and July 2014, or in her deficient attempt to file an amended witness list in January 2015.  She did not identify Shepherd's e-mails and/or deposition among the remaining items of discovery that she said she needed in her Partial Response to Magistrate's Continuance Order filed on January 13, 2015.  Record Doc. No. 43.  Wade did not seek to depose Shepherd until February 2015, after defendant had filed a motion for partial summary judgment on Wade's retaliation claim.  The Postmaster filed a motion for summary judgment on all of plaintiff's claims on April 8, 2015, which made the same arguments as her previously dismissed motion for partial summary judgment.  Wade twice declined to depose Shepherd after that.  Plaintiff did not propound written

17

discovery requests seeking Shepherd's e-mails until May 2015.  Plaintiff's lack of
diligence in pursuing discovery regarding Shepherd's participation in the removal
process is an independent reason to deny Wade's motion for continuance.  See McKay,
751 F.3d at 700 n.4 (citations omitted) ("Because Appellants were not diligent, we need
not address whether they have shown that their additional discovery would have created
a genuine issue of fact.").

Accordingly, plaintiff's motion to continue is denied and the court will rule on
defendant's motion for summary judgment based on the competent evidence in the
summary judgment record.

C.   Standards of Proof Under the Rehabilitation Act

Wade claims that the Postmaster failed reasonably to accommodate her disability,
in violation of the Rehabilitation Act, which provides that "[n]o otherwise qualified
individual with a disability . . . shall, solely by reason of her or his disability, be excluded
from the participation in, be denied the benefits of, or be subjected to discrimination
under any program or activity . . . conducted by . . . the United States Postal Service."
29 U.S.C. § 794(a).  The Rehabilitation Act and the Americans with Disabilities Act, 42
U.S.C. § 12101 et seq., are judged under the same legal standards.  The same remedies
are available under both Acts and the case law interpreting either section is applicable
to both.  Kemp v. Holder, 610 F.3d 231, 234-35 (5th Cir. 2010) (citing 42 U.S.C. §
12131(1); 29 U.S.C. § 794(a); Delano-Pyle v. Victoria Cnty., 302 F.3d 567, 574 (5th Cir.

2002)); accord Lanier v. Univ. of Tex. Sw. Med. Ctr., 527 F. App'x 312, 317-18 (5th Cir.

2013).  The definition of disability set forth in the Americans with Disabilities Act is also

applicable to claims under the Rehabilitation Act.  Kemp, 610 F.3d at 234-35.

When a plaintiff asserts retaliation or discrimination under the Rehabilitation Act

and relies on circumstantial evidence, the court applies the familiar McDonnell Douglas

burden-shifting framework.

> Under that framework, the plaintiff must first establish a
> prima facie case of discrimination, which requires a showing
> that the plaintiff (1) is a member of a protected group; (2) was
> qualified for the position at issue; (3) . . . suffered some
> adverse employment action by the employer; and (4) . . . was
> treated less favorably than other similarly situated employees
> outside the protected group.  To establish a prima facie case
> of retaliation, the plaintiff must establish that (1) he
> participated in [a protected activity]; (2) his employer took an
> adverse employment action against him; and (3) a causal
> connection exists between the protected activity and the
> adverse employment action.
> . . . .
> Once the plaintiff makes his prima facie showing, the
> burden then shifts to the defendant-employer to articulate a
> legitimate, non-discriminatory reason for the adverse
> employment action.  Once the employer articulates such a
> reason, the burden then shifts back upon the plaintiff to
> establish by a preponderance of the evidence that the
> articulated reason was merely a pretext for unlawful
> discrimination.

Sapp v. Donohoe, 539 F. App'x 590, 595 (5th Cir. 2013) (quoting McCoy v. City of

Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007); McInnis v. Alamo Cmty. Coll. Dist.,

207 F.3d 276, 280 (5th Cir. 2000)).

A disability is defined "in relevant part as 'a physical or mental impairment that substantially limits one or more major life activities of such individual.'  An impairment is substantial if it 'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'"  Lanier, 527 F. App'x at 318 (quoting 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20)(B); 29 C.F.R. § 1630.2(j)(1)(ii)).

> Discrimination based on disability
>
> includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship."  Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim:  (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.

Feist v. La., Dep't of Justice, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)) (citing Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013); Cloe v. City of Indianapolis, 712 F.3d 1171, 1176 (7th Cir. 2013); Griffin v. UPS, 661 F.3d 216, 222 (5th Cir. 2011); Mzyk v. N.E. Indep. Sch. Dist., 397 F. App'x 13, 16 n.3 (5th Cir. 2010)).

D.    Plaintiff's Claim of Failure to Accommodate her Disability

1.    Reasonable accommodation request

Wade first argues that the Postmaster violated the Rehabilitation Act by failing to offer her reasonable accommodations for her known disability when defendant refused her light duty request on December 23, 2010.  Plaintiff bears the burden of showing a failure to accommodate under the Rehabilitation Act.  Sapp, 539 F. App'x at 595.

The Postmaster argues that Wade never requested an accommodation for her disability and that her requests for temporary light duty, which admittedly were made pursuant to the Collective Bargaining Agreement, did not also constitute a request for an accommodation under the Rehabilitation Act.  Defendant asserts that an employee who cannot perform the physical demands of her job can pursue two distinct paths by requesting light duty through the Collective Bargaining Agreement or requesting accommodation under the Rehabilitation Act.  The Postmaster concedes that an employee who seeks reasonable accommodation may pursue either or both paths, simultaneously or consecutively, and the employee need not use the words "reasonable accommodation," Rehabilitation Act or any other "magic words" when seeking such an accommodation. See Jones v. United Parcel Serv., 502 F.3d 1176, 1194 n.13 (10th Cir. 2007) (quotation omitted) ("To communicate a desire for reassignment, an employee need not use magic words, but must convey to the employer a desire to remain with the company despite his or her disability and limitations."); Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318,

332 (3d Cir. 2003) (quotations omitted) ("[C]ircumstances will sometimes require [t]he employer . . . to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help.  However, either by direct communication or other appropriate means, the employee must make clear that the [he/she] wants assistance for his or her disability.  The employer must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation.").

Nonetheless, the Postmaster emphasizes that "[i]t is the plaintiff's burden to request reasonable accommodations."  Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007) (citing Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 735 n.4 (5th Cir. 1999)).  "[O]nce the employee presents a request for an accommodation, the employer is required to engage in [an] interactive process so that together they can determine what reasonable accommodations might be available."  E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 699 (5th Cir. 2014) (quoting E.E.O.C. v. Chevron Phillips Chem. Co., 570 F.3d 606, 622 (5th Cir. 2009)).

Material fact issues are in dispute that preclude summary judgment on this basis. Wade avers in her declaration, without contradiction in the summary judgment record, that she never saw a poster in the workplace with defendant's obligations under the Rehabilitation Act.  The Postmaster has produced no evidence that Wade knew or should

22

have known that the availability of two different paths, on which defendant places so much emphasis, required Wade to make a separate request to trigger the employer's obligation to work with her to find a reasonable accommodation.

The deposition testimony of Michael Gardner, Defendant's Exh. 12 at pp. 40-41, and Anita Smith, Defendant's Exh. 14 at pp. 9-12, on which the Postmaster relies, establishes only that two paths existed under the Collective Bargaining Agreement and the Rehabilitation Act for an employee to request a change in duties when she had limited physical abilities. However, these deponents say nothing about how an employee was supposed to know that the parallel or alternative paths existed or how the employee was supposed to initiate a reasonable accommodation request if she did not use those particular words.

The only evidence that defendant cites regarding the procedures for a reasonable accommodation request consists of "USPS Handbook EL-307," which is entitled "Reasonable Accommodation, An Interactive Process" and is dated October 2008. The Postmaster has not introduced this evidence into the summary judgment record, but has only provided a link to it: http://about.usps.com/handbooks/el307.pdf.

Assuming that this handbook is admissible and was in effect when Wade made her light duty request in December 2010, its contents indicate that it is provided only to supervisors and managers, <u>not</u> to employees, to guide the supervisors in deciding when an employee is requesting an accommodation and then processing the request. <u>See id.</u>

23

at § 12, p. 6 (visited May 31, 2015) ("This handbook establishes procedures that enable Postal Service managers and supervisors to make sound decisions regarding reasonable accommodation for qualified individuals with disabilities . . . ."). The following provisions, cited by the Postmaster in her motion, suggest that this handbook is directed at supervisors, that employees may request a reasonable accommodation without actually using those words and that the supervisor apparently makes the decision whether a particular request falls under the Rehabilitation Act.

> A request for reasonable accommodation may be made orally or in writing by an employee or by someone acting on the employee's behalf. To request an accommodation, an employee may use plain language and need not mention the Rehabilitation Act or use the phrase "reasonable accommodation." <u>The employee need only let you know that he or she requires a change at work because of a physical or mental impairment</u>.

<u>Id.</u> at § 54, p. 54 (emphasis added).

> The term "light duty" is a contractual term. It refers to temporary work assignments – not positions – requested by eligible employees who have impairments from non-job-related medical conditions. Light duty is governed by Article 13 of most collective bargaining agreements and provides for the assignment of work, if available, to an employee unable to perform his or her regular duties. Therefore, light duty requests are handled by the installation head (or appropriate designees) pursuant to the terms of the relevant contract, rather than by the Reasonable Accommodation Committee or reasonable accommodation decision maker. However, it is important to recognize that an <u>employee with a disability under the Rehabilitation Act may request light duty, believing it to be a reasonable accommodation. In such instances, the Reasonable Accommodation Committee or reasonable accommodation decision maker is the appropriate party to explore accommodation with the employee</u>.

Id. at § 541.2, p. 53 (emphasis added).  The emphasized language in these two sections supports plaintiff's contention that her light duty request could constitute an accommodation request and that the USPS would determine whether to explore the same request as a reasonable accommodation.

Unlike in Sapp, 539 F. App'x at 593, cited by defendant, the Postmaster has presented no evidence that Wade was ever advised of the option or requirement to file a reasonable accommodation request separate from her light duty request.  The case law also does not support the Postmaster's argument that an employee's request for light duty or temporary reassignment cannot suffice as a request for a reasonable accommodation. See LHC Group, Inc., 773 F.3d at 700 (The employee never said that she wanted an accommodation or her disability was permanent, but she "expressly reached out to her supervisors, indicating that she wanted temporary help . . . in light of her high medication levels.  Faced with Sones's request for 'extra help,' . . . her supervisor, kept silent and walked away.  On this record, a reasonable jury could find that Sones reached out to LHC for accommodation and was denied an interactive process."); Silva v. City of Hidalgo, 575 F. App'x 419, 422-24 (5th Cir. 2014) ("Silva in fact initiated a discussion about reasonable accommodations by requesting (more than once) to be placed on light duty or desk duty."); see also Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008) (While generally it is the employee's responsibility to inform the employer of her need for an accommodation, "an employer has a duty to accommodate an employee's

disability if the disability is obvious–which is to say, if the employer knew or reasonably should have known that the employee was disabled.").  Thus, material fact issues are in dispute whether Wade met her obligation to request an accommodation for her known disability when she requested light duty.  Defendant's motion cannot be granted on this ground.

### 2.   Qualified individual with a disability

The Postmaster also argues that plaintiff cannot show that she is a "qualified individual with a disability," as required to establish a prima facie case of disability discrimination.  Wade has presented no evidence to carry her burden to show a material fact issue regarding this essential element of her prima facie case.

The Fifth Circuit "consistently requires the claimant to prove (1) she has a disability and (2) she is qualified for the job she held." LHC Group, Inc., 773 F.3d at 695 (emphasis added); see also Kemp, 610 F.3d at 235 (plaintiff "must show he is qualified and able to perform the essential functions of his job").  The court's reasoning in Silva, quoted below, applies equally to Wade.

> A "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." [42 U.S.C.] 12111(8).  A reasonable accommodation may require reassignment to a vacant position.  Id. § 12111(9).
> . . . .
> [Even though Silva initiated a discussion about reasonable accommodations by requesting to be placed on light duty, her supervisor] testified in his deposition that **there were no such positions available** and

Silva has not provided any evidence to the contrary. "For the accommodation of a reassignment to be reasonable, it is clear that **a position must first exist and be vacant**." Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir. 1997). "The plaintiff bears the burden of proving that an available position exists that [s]he was qualified for and could, with reasonable accommodations, perform." Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007).

> . . . .

"[T]he regulation's direction to the parties to engage in an interactive process is not an end in itself–it is a means to the end of forging reasonable accommodations." Loulseged, 178 F.3d at 736. "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." Id. at 736 (emphasis added). Silva's claims that the City was under an obligation to keep her position open for an unspecified amount of time until she was able to return (which turned out to be at least five months after her FMLA leave expired) or **create an entirely new position for her simply cannot be squared with the statute's entitlement to a "reasonable" accommodation**. Accordingly, even if a genuine issue of material fact exists as to whether the City participated in the interactive process in good faith, its dereliction cannot be said to have led to a failure to reasonably accommodate Silva because there is no evidence that a reasonable accommodation was feasible.FN3  For this reason, Silva has not put forth evidence sufficient to prevail on her ADA claim.

> FN3. In E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 621 (5th Cir. 2009), a panel of this Court stated that "[w]hen an employer does not engage in a good faith interactive process, that employer violates the ADA–including when the employer discharges the employee instead of considering the requested accommodations." This summary statement was not intended to eradicate Loulseged's causation requirement or relieve a plaintiff of her **burden of showing that a vacant position existed which she was qualified to perform**. See Picard v. St. Tammany Parish Hosp., 423 F. App'x 467, 470 (5th Cir. 2011) (failure of employer to engage in the interactive process is not a per se violation of the ADA).

Silva, 575 F. App'x at 422-24 (underlined emphasis by the Fifth Circuit; bold emphasis added); see also Stern v. St. Anthony's Health Ctr., No. 14-2400, 2015 WL 3499838, at *13 (7th Cir. June 4, 2015) (quotations omitted) ("Failure of the interactive process is not an independent basis for liability under the ADA. . . .  Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation.").

In the instant case, even though defendant may have failed to engage in the required interactive process, Wade admittedly could not perform the functions of her job as a mail processing clerk when she submitted the light duty request in December 2010. It is undisputed that the light duty that Wade had been performing since 2000 was not, nor was it ever, a "vacant funded position." Defendant's Exh. 9, declaration of Gilbert Romero at ¶3; Defendant's Exh. 10, deposition of Mark Conway at p. 31.  Instead, it was merely a set of tasks assigned to her in an effort to provide her with work because of her medical restrictions and was not a position of a permanent nature for which other employees could apply.  Defendant's Exh. 9 at ¶3; Defendant's Exh. 10 at pp. 31-32.

Wade may argue that defendant could have accommodated her by continuing to allow her to perform light duty tasks, as she had for 10 years, which exempted her from many of the functions essential to the mail processing clerk job that she held.  The law does not require that she be allowed not to perform the essential functions of her job.

> Therefore, it was not a 'reasonable accommodation' with reference to the [mail processing clerk] position . . . . See Jones [v. Kerrville Hosp., 142 F.3d 263, 265 (5th Cir. 1998)] ("As a matter of law, it is an unreasonable accommodation for the employer to have to exempt the employee from performance of an essential function of the job."); Barbor v. Nabors, 130 F.3d 702, 709 (5th Cir. 1997) (logically, employee cannot perform essential functions of job with reasonable accommodation, and thus cannot be "qualified", if the only successful accommodation is to exempt the employee from those essential functions).

Lopez v. Tyler Refrigeration, 207 F.3d 657, 2000 WL 122387, at *3 (5th Cir. Jan. 4, 2000); see also id. at 83 n.8 (citing Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1094 (5th Cir. 1996); Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995)) (A contention that plaintiff was entitled to a permanent, full-time light duty position "would be without merit. [Defendant] does not have any permanent light duty positions, and was not required to create a new position to accommodate [plaintiff].").

Wade argues that her long-term, modified light duty is the job that should be considered to determine whether she was qualified for her job. The reported decision that she cites for this proposition is not on point. In Chalfant v. Titan Distrib., Inc., 475 F.3d 982 (8th Cir. 2007), plaintiff was an employee of a third-party contractor and had been performing a job for defendant for five years without any restrictions. Defendant decided to terminate the contractor and hire its own employees. Chalfant was invited to re-apply for his position, which required that he pass a physical examination. He stated for the first time on his application that he had a disability. Id. at 986-87. Defendant did not rehire him, claiming that he had not passed the physical examination. However, the

evidence showed that defendant changed the duties of the job <u>after</u> it placed someone else in the position.  The appeals court held that there was sufficient evidence to find that Chalfant was qualified to perform the essential functions of the job as it existed when he was invited to apply for it because, for a week after he applied for it and before defendant declined to hire him, he continued to perform it in the same way as he always had.  <u>Id.</u> at 989-90.  This case involving an <u>unmodified</u>, long-term, permanent job does not support Wade's contention that her light duty assignment, which was not her permanent job, should be considered the job for which she was qualified.

Wade has not met her burden to show a material fact dispute that she is a qualified individual with a disability.  Accordingly, she cannot establish a prima facie case and defendant is entitled to summary judgment in her favor as a matter of law on her failure to accommodate claim.

      D.   <u>Plaintiff's Retaliation Claim</u>

Wade alleges that she was removed from her position as a mail processing clerk in retaliation for filing a grievance following the denial of her request for light duty in February 2007 and for having participated in an arbitration hearing on February 3, 2012.  The undisputed facts establish that USPS sent a Notice of Proposed Removal to her on February 3, 2012.  A few days later, the arbitrator rendered a favorable result for Wade on her 2007 grievance and awarded her lost wages and benefits for the time that she was out of work in 2007.  Plaintiff did not mention the February 2012 arbitration hearing or

her subsequent award to any of her supervisors or managers.  None of her supervisors or managers said anything about the arbitration hearing or award to her.  Other than the arbitration hearing being on the same day as her Notice of Proposed Removal, Wade has no reason to think that the USPS retaliated against her.  The removal process began on January 17, 2012, when plaintiff's supervisor, Williams, and Shepherd, the Manager of Distribution Operations, both signed a Request for Appropriate Disciplinary Action.

Wade objects that Williams's declaration under penalty of perjury is inadmissible hearsay, but cites no authority for her objection.  The objection is overruled. Declarations under penalty of perjury are admissible under Fed. R. Civ. P. 56(c)(4). Williams's statements in her declaration consist of information within her personal knowledge.

As previously stated, to establish a prima facie case of retaliation under the Rehabilitation Act, Wade must show that (1) she participated in a protected activity, (2) she suffered an adverse employment action and (3) a causal connection exists between the protected activity and the adverse employment action.  The Postmaster argues that plaintiff's 2007 grievance and the arbitration hearing, both of which proceeded pursuant to the Collective Bargaining Agreement, cannot be activity protected by the Rehabilitation Act.  Defendant also contends that Wade cannot establish a causal connection between her removal from service and the arbitration hearing on the same date as the removal notice, which is plaintiff's sole evidence of retaliation.

The Fifth Circuit "has never squarely determined . . . whether union activities are protected activities under Title VII," Ramirez v. Gonzales, 225 F. App'x 203, 210 (5th Cir. 2007), nor have the parties cited any case law addressing this issue under the Rehabilitation Act or the Americans with Disabilities Act.  The Postmaster does not ask this court to decide the unanswered question, but only argues that on the undisputed facts of this case, plaintiff's grievance and the arbitration hearing were not protected activities because neither one referred to any disability discrimination, failure to accommodate a disability or the Rehabilitation Act.  Having found above that material fact issues exist whether plaintiff's requests for light duty could constitute requests for reasonable accommodation under the Rehabilitation Act, I also find that material fact issues remain whether her grievance and participation in the arbitration hearing could be considered protected activities.

However, defendant's argument that Wade cannot establish the third prong of a prima facie case has merit.  Plaintiff's only evidence regarding this element is that the Notice of Proposed Removal was sent to her on the same day as the arbitration hearing. Evidence of such close temporal proximity between protected activity and an adverse employment action may demonstrate a material fact issue on causation.

> [E]ven at the prima facie stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 . . . (2001) . . . ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse

employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (emphasis added) (internal quotation marks and citation omitted)); <u>Cothran v. Potter</u>, 398 Fed. Appx. 71, 73-74 (5th Cir. 2010) . . . ("The combination of temporal proximity and knowledge of a protected activity may be sufficient to satisfy a plaintiff's prima facie burden for a retaliation claim"); <u>Ramirez v. Gonzales</u>, 225 Fed. Appx. 203, 210 (5th Cir. 2007) . . . ("Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action."); <u>see also</u> <u>Brungart v. BellSouth Telecomms., Inc.</u>, 231 F.3d 791, 799 (11th Cir. 2000) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.").

<u>Thompson v. Somervell Cnty.</u>, 431 F. App'x 338, 342 (5th Cir. 2011).

As in <u>Thompson</u>, it is undisputed that none of Wade's supervisors or managers was aware of the arbitration hearing on February 3, 2012, when the Notice of Proposed Removal was sent to her. That lack of knowledge is fatal to plaintiff's claim that her supervisors retaliated against her for her participation in the hearing. <u>Id.</u>

It is also undisputed that the removal process began no later than January 17, 2012, when Williams and Shepherd signed a Request for Appropriate Disciplinary Action. Arguably, the removal process began as early as December 30, 2011, when Williams scheduled an investigative interview to determine whether Wade could perform the duties of her employment. Williams conducted the interview on January 9, 2012. Plaintiff's supervisors could not have had knowledge in December 2011 and January 2012 of her participation in arguably protected activity that did not occur until

February 3, 2012.  Even if Wade's supervisors knew of her arbitration hearing on February 3, 2012, they initiated her removal before that date and she cannot establish the required causal connection to make out a prima facie case.  Jimenez v. Potter, 211 F. App'x 289, 291 (5th Cir. 2006); Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 494 (5th Cir. 2011); O'Neal v. Roadway Exp., 181 F. App'x 417, 421 (5th Cir. 2006).

Similarly, plaintiff cannot show a causal connection between her 2007 grievance and her removal in February 2012.  Obviously, no temporal proximity is established by the gap of almost five years between the grievance itself and her removal.  There is also no record evidence that any other events occurred regarding that grievance were known to Williams or Shepherd when they began the removal process on January 17, 2012 (or earlier).

Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim as a matter of law.

<u>CONCLUSION</u>

For all of the foregoing reasons, IT IS ORDERED that plaintiff's motion for a continuance is DENIED, and defendant's motion for summary judgment is GRANTED.  Plaintiff's claims are therefore DISMISSED WITH PREJUDICE.  Judgment will be

entered accordingly, plaintiff to bear all costs of this proceeding.  Fed. R. Civ. P. 54(d)(1).

New Orleans, Louisiana, this _____22nd_____ day of June, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

35